Good morning judges. I'd like to start off first by just saying the gravamen of this appeal is not to have the lead respondent a second bite at the apple, so to speak. This appeal is based on due process infirmities at the inception of this case back in 2004 when the attorney for the respondents, excuse me, failed to vet the claims of the other respondents. This was a family of four. There were two children, one 16, one 17, and the wife.  So with respect to the BIA's decision denying the motion to reopen, there's been a change in the law, so to speak. There's been more cases in this circuit with respect to the disfavored group analysis, which was not even applied in the BIA's decision. So basically, even the government's brief, they more or less conflate the adverse credibility determinations at the trial, so to speak, at the merits hearing, and somehow reach the conclusion because there was no credibility with the lead respondent, the individualized claims of the other respondents more or less have no credibility or there's no prima facie case. Okay. But at that time, they were pursuing the petitioner previously listed as daughters as derivative beneficiaries, right? That's correct. But now the daughters want to pursue relief separately, and I just have a question. Have the daughters, what, Alexandra and Norena, pursued mediation independently of their father? I know previously mediation efforts were unsuccessful, but I wonder are the daughters, whether they present more compelling candidates for mediation. Well, there was mediation in this particular matter, and they were, at least we thought they were, severed from the case. As I understand today from counsel, there was no severance. They've been granted DACA. So I agreed to sever them out and go based on the wife's individualized claim. So we're not really concerning ourselves with the daughters at this point? Well, that was my understanding, Judge Callahan. That was my understanding up until this morning. I'm sure it's about a fingerprint issue. They were issued work authorization that requires fingerprinting, so I'm not sure where the problem lies. I have to make some follow-up calls. I just found this out today. But for the sake of today, I would assume that we have to just go forward with all respondents. Well, all right. I think part of what you were trying to claim as changed circumstances was the birth of the child. There's a grandchild now, I guess, or the grandchild, right? And I'm wondering, how do you distinguish Hay versus Gonzales, where we held that the birth of a child alone is a change in personal circumstances that's not sufficient to establish changed circumstances in the country of origin? Exactly. Well, I was only mentioning that aspect because obviously that child would go back with the mother, and the mother would be persecuted as a targeted Armenian in Russian society. I mean, it's quite clear from the country reports that is what's going on. And, in fact, in 2010, the Russian government passed a law which allowed local authorities to engage in that sort of activity with impunity, or at least on the face of it, not so clear, but in practicality, that's the basis of that law. And that exhibit was provided in my motion to reopen. With respect to your direct response to your question, I am not arguing changed circumstances here. I'm arguing changed circumstances over there, which would enhance targeting of Armenians in Russia. So when you talk about materiality of a changed circumstance, you have to take into consideration what avenue these people are seeking to basically claim asylum. And that would be more or less under this favored group analysis, which requires ‑‑ Okay, but you have to show changed circumstances because that's the only way on a motion to reopen. Because you don't have to deal with the timeliness, right? Yeah. Okay. So why don't you then say what, in the record, what circumstances in Russia are now so different than your application when it was first before the judge in 2004, that your fear of persecution is well-founded now, even though it was not well-founded then? Well, the changed circumstances in Russia is that now there's a formal endorsement of this particular persecution against Armenians or other groups that are targeted because of this change of law in Russia. That's a clear formal endorsement, where rather it was an informal practice by the local authorities as well as the police and local militias that were more or less operating under the acquiescence of the local police. And when did that occur? That would be a changed circumstance. When did that occur? That law was passed in 2010. When in 2010? It was a law that allowed the former KGB, which is now the ‑‑ I said when in 2010. It's in my brief. I believe it's an exhibit. Rather it's an exhibit in the record. I don't have the date of the actual change of law. It's likely it was after the motion to reopen was filed. Yes. So you're relying on your motion to reopen on events that have not yet occurred.  I'm hoping to show that that law is a material change of circumstances. All I know is that the motion to reopen was filed in February of 2010. That's correct. I'm not sure when in 2010 that law was passed, but it was attached to the motion to reopen as an exhibit. So assuming if I had the attachment ‑‑ You're saying what was the practice before was now formalized, and that's the change in circumstance. Well, there was a lot of acquiescence by the local authorities to allow this sort of persecution against these ethnic groups. And the local militia, which were described as Cossacks, in the lead petitioner's testimony, these particular groups were persecuting Armenians without impunity. I'd like to move on to the issue of there not being a prima facie case. The BIA said there's no prima facie case, and I believe the essence, when it all boils down, is that that's because of the adverse credibility determinations by the lead respondent. As I mentioned before, these individuals ‑‑ But if it's a derivative complaint, and everyone's based, they're basing their persecution on the story that one person's telling, then that's what it means. It's sort of like fruit of the poisonous tree and search warrants. You know, it's like if the story that everyone's relying on falls apart, then everyone that's relying on it suffers the consequences of it. Well, each individual has their own ‑‑ I mean, that's just the way it works. If they had separate complaints, then ‑‑ I mean, separate petitions, that's a different story. I understand. And that's the purpose of this appeal, is to see if I can get them or get this Court to remand this so they'll have that opportunity to put in there separate, specific, individualized events in their own lives. Let's not forget, these are three women as opposed to the male lead respondent. The analytic prism is filtered differently with gender because even women are persecuted outside of the disfavored group analysis. So now you've got women, disfavored group, a heightened amount of persecution being targeted at them, which under Wackery and even under Gessysian versus Mukasey, the more targeting, the less individualized persecution you have to demonstrate to be eligible for asylum under that particular standard. The BIA is looking at this. They're not even addressing disfavored group. So they're really not even applying the standard that they would more or less be asserting in their own claims. And so, therefore, it's almost an error of law because they're applying a more stringent standard than the applicants would be asserting or would have to meet under their own asylum claims. Do you want to save some time? I guess I'm saving 25 seconds. Thank you, Judge. What is the actual status of what counsel referred to at the outset of the argument? Yes, good morning, Your Honor. The status is as of March of 2015, the ICE was willing to provide DACA to the two girls as long as they were severed from the case and their background checks would have to be done. And as far as I know, and I'm new to the case, that was never done. Somewhere the ball was dropped and they have not been severed from the case. We're here today with all four Petitioners. So who should be asking to sever? I think the Petitioner would have to move to sever. And you wouldn't have opposed it? I would not have opposed severing on the basis of DACA because they received the DACA relief. The ICE was willing to administratively close the case once the background checks were performed and once these two daughters were severed from the case. But they were not willing to give any prosecutorial discretion for the father or the mother in the case due to the fact that there was an adverse credibility determination that was approved by this court and that they've had many, many bites of the apple. There's really two issues before the court. The main overall concern is that for the court to overturn what the Board has done, the Board has to have abused its discretion, meaning the Board did not act arbitrarily, irrationally, or contrary to law, and that's the case here. First, the Board denied the Petitioner's motion to reopen as untimely where they failed to show material changed country conditions to justify their untimely filing. And second, the Board denied Petitioner's motion for reconsideration where they failed to point to an error of law or fact in the prior Board decision. It's very interesting to note that for the untimeliness to be acceptable, the Petitioners have to show a change of country conditions from the date of their hearing, which was in May of 2005, to the date of their motion to reopen, which was February of 2010. Those changes have to be material, has to be evidence that was not previously available,  If we take a look at the country reports that were issued in 2008, the country reports are full of language of continuation of bad country conditions. For example, on page 165, human rights record remained poor in North Caucasus. Prison conditions remained harsh on page 170. Arbitrary arrest and detention remained problems. Page 171. During the year, complex and interlocking insurgencies caused continuing instability in North Caucasus. Page 175. Human rights remained poor. Page 175. Ongoing strife in North Caucasus. 176. Federal and local law enforcement continued disproportionately targeting members of ethnic minorities. So at best, it shows a continuation of the country conditions that were in place or were occurring in 2005 at the date of the merits hearing. Did the petition have attached as an exhibit a new statute that made this kind of persecution official as opposed to unofficial? I'm not aware of any statute in the year of the motion to reopen, which, as Your Honor correctly pointed out, occurred on February 10th of 2010. Well, what bothers me about this denying motion to reopen, in the denial is only one sentence about the changed country conditions, which is the basis for the issue. And all it says is the evidence proffered does not reflect materially changed country conditions in Russia since this case was before the immigration judge. It doesn't discuss what the conditions were before, what they are since, what the alleged changes were. There's not a word. It's a one-sentence conclusion. That's true. Is that sufficient for a reasoned opinion? We believe it is sufficient because they did make that conclusion and the record supports that conclusion. Well, whether it supports it or not, suppose the rest of the opinion really has nothing to do with the question of whether there were changed country conditions. If somebody alleges changed country conditions and makes an argument and points to a number of things, he contends maybe wrongly or changed country conditions. You think all the BIA has to do is to say, no, there are no changed country conditions? I think that that sentence is sufficient to show that the BIA considered it and reviewed it and analyzed it and came to that conclusion. And then it is up to counsel to look at the record to show what happened before the hearing. We could get a lot shorter opinions from the BIA if all they had to do when they decided an issue is say, no, it's not so. He's not entitled to asylum. Under the Akinion case, all the board has to do is show or the agency has to do is show that it considered the evidence and that it reached a conclusion. And the sentence that you want to read. How does it show it considered the evidence? Well, just the sentence says the evidence proffered with the Respondent's present motion. It shows that they at least reviewed the evidence proffered with the Respondent's present motion. It does not reflect materially changed country conditions in Russia since this case was before the immigration judge in May of 2005. So it shows that there was a review of the evidence produced by the plaintiff or the petitioner. The petitioner has the burden of proving material changed country conditions, and those have to be attached to the motion to reopen. And the attachments in comparison with the report in 2005 and 2004 country reports is exactly the same. I'm serious here. I want to understand this. Is there a different standard for what the board has to do in a motion for reopening when it denies it than if it were considering the case at the outset? I don't believe there's any difference, Your Honor, but I do. Then could they have said in an asylum case, the evidence does not support a grant of asylum, and that would be it? Well, in an asylum case we have considered all the evidence, and it does not support a grant of asylum. Well, I would – I think in most cases it's more fleshed out than that, and it's more – Well, is it – there is a difference, though, in terms of when you look at a country report not for a motion to reopen. I mean, you have to look at it, but then you also have to make an individualized determination, do you not? Exactly. You do. So there is a difference. Right. Because you have the facts. Then having the motion to reopen, it's a different – the burden is different. It's on the person that's asking to reopen because they're already in an untimely position, so they have to show a change. And, you know, that – but when you're looking at country conditions before, it not only has to be what the country conditions show, but it has to somehow be individualized as to the Petitioner, right? Exactly. And that's why the Petitioner comes before an immigration judge to explain any events occurred and how they are personally – they were personally affected by being Armenians, in this case, in this Russian area. And they do have a burden – they have their burden before the immigration judge, but in a sense, they have an even stronger burden on a motion to reopen because they have to show the fact that they were untimely. But doesn't the governor – doesn't the government have a burden at that point with the country conditions to – in the asylum? Doesn't the government have a position on the individualized part of it? Yes. In the asylum area, it's very different because the government often does provide the country reports, and the Petitioners are there before the immigration judge giving testimony to show that they merit asylum. So – and if they can show past persecution, then the burden does shift. So the burdens are a little different on that stage or in that round than they are in a motion to reopen. Here, the motion to reopen was filed over three years late. They have 90 days to file it. It was filed over three years later. Well, let me ask you this, though. So I'm still a little bit confused over – since Petitioners' lawyers didn't sever out the daughters, if – and I don't know how this case is going to be decided. We haven't talked about it. So – but hypothetically, if we were to not give relief based on the record before, does that preclude the daughters from proceeding along those lines anyway? It does not. I mean, the daughters are still eligible for whatever relief ICE is willing to give in terms of administrative closure of their cases. But a question Your Honor had asked earlier about mediation, they were in mediation for over a year to try to work this out, and they were not in mediation separately. They were in mediation as a family. And I think that's an important consideration. I assume you would be able to give us a status report in, what, ten days, two weeks, about what's happening with this severed question, with the daughters being severed? Yes, I'd be more than happy to provide a status report and talk to ICE myself. And I just gave counsel for Petitioners the name and phone number of the individual who spent one year of mediation. But the counsel here spent one year trying to work this out. So – but I'd be very happy to provide a status report. So if there's no further questions, the petition – the second and third petition for review, which are before this Court, should be denied. Thank you. Thank you. I don't think we actually got your name. We kind of jumped in. My name is Colette Winston, representing Attorney General Loretta Lynch. Thank you. Thank you. Just two quick points. First on this matter of severance, we engaged in mediation, and it's my recollection that I was emailed something to take it out of mediation with the girls. I'll have to check when I get back to my office in New York. However, there was – it was quite clear the girls were going to be severed. Well, but that just doesn't happen. I understand. I understand. You know, so, I mean, you're here now. You have your marching orders if you want to do something for them. And the – a Deputy Attorney General has said she'll personally make a call. So, you know, we don't sua sponte sever things. They don't sever them. You know, why it did or did not occur, but you know now what you have to do. I understand, Judge. But DACA, I believe, expired in, I believe, in May for applications under DACA. So there could be an issue here because I'm finding out now that this never occurred. Not receiving any email from the attorney I was referring to in mediation, Mr. Conway, as to the issues that are being presented today. All right. Will you also, within two weeks, send us a status report of what's happening with – whether anything is happening about severability or severance or both sides to give us a status report of what's happening with that? Yes, I will do that, Judge. Thank you. The other issue is I never mentioned ineffective assistance of counsel as a basis to toll, equitable tolling. And I would just urge the court just to read that aspect of my brief. So basically, to sum it up, there's two bases. There's changed country conditions. And if the girls are still in it, the minors – well, they're not minors now, but legal disability and with respect to ineffective assistance of counsel applying equitable tolling on the 90-day and numerical limitations. Thank you, counsel. The case is arguably submitted.
judges: Reinhardt, Noonan, Callahan